## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FARMERS AND MERCHANTS TRUST COMPANY OF CHAMBERSBURG, <br><br> Plaintiff, <br><br> v. <br><br> JOHN J. KORESKO, V; JEANNE BONNEY; PENNMONT BENEFIT SERVICES, INC.; KORESKO & ASSOCIATES, P.C.; KORESKO LAW FIRM, P.C.; and PENN PUBLIC TRUST <br><br> Defendants. | NO. 2:09-cv-5112-CDJ |

## BRIEF IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

### I.    FACTUAL BACKGROUND

Most of the factual background relevant to the instant action has been developed over six days of hearings in the related matter of *Solis v. Koresko*, Docket No. 2:09-cv-00988.  The following facts are relevant to F&M Trust's Motion for Temporary Restraining Order and Preliminary Injunction.

On or about March 18, 2002, Community Trust Company ("CTC") became the trustee of the Regional Employers Assurance Leagues Voluntary Employees'

759980.2

Beneficiary Association Plan and Trust ("REAL VEBA"), pursuant to that certain Master Trust Agreement for the REAL VEBA (the "REAL VEBA Trust Agreement"). (Peterson Affidavit, ¶ 3).[1] On or about December 30, 2002, CTC became the trustee of the Single Employer Welfare Benefit Plan and Trust ("SEWBPT"), pursuant to that certain Master Trust Agreement for the SEWBPT (the "SEWBPT Trust Agreement"). (*Id.*, ¶ 4). Effective November 29, 2008, F&M Trust acquired CTC by way of a merger transaction. F&M Trust is the successor by merger to CTC, and the successor trustee to the REAL VEBA and SEWBPT. (*Id.*, ¶ 5). Under the Trust Agreements, F&M Trust is a directed trustee, and takes direction from the Plan Administrator, currently PennMont. (*Id.*).

### *Nature of the Plans and Benefit Arrangements*

Employers established or maintained plans for the purposes of providing death benefits, medical, education or other benefits to employees pursuant to each employer's execution of an adoption agreement to the Regional Assurance Leagues [Formerly: The Delaware Valley Leagues] Voluntary Employees' Beneficiary Association Health and Welfare Benefit Plan (the "Plan Document").

Generally, adopting employers contributed sums to the Trust which were disbursed by the Trustee to pay insurance premiums on life insurance policies

---

[1] The Affidavit of Tom L. Peterson is attached hereto as Exhibit "A."

2

acquired by the Trustee at the direction of the Plan Administrator for the purpose of funding the death and other benefits provided for by the plans of adopting employers. The Trustee is the nominal owner of all insurance policies on behalf of the Trust, including all cash value in the policies. See Plan Document, § 7.05(f); Affidavit of Jeanne Bonney, ¶ 29, Docket 2:09-cv-988 Entry 150.

Under the Trust Agreements, the REAL VEBA and SEWBPT Trusts were established "for purpose of receiving contributions of the Adopting Employer and its employees to provide for life, sick, accident or other benefits and distributing benefits to the employees and beneficiaries hereunder or payment of insurance premiums or making such other similar payments pursuant to the terms of the Plan." § 2.1 of the SEWBPT. The Trust Agreements further provide that "The Trustee shall receive contributions into the Trust Fund which shall be made only in cash or in the form of such other property as the Trustee may deem acceptable and hold same uninvested until applied to the purposes of this Trust as directed by the Plan Administrator". § 4.2 of the SEWBPT.

### The Custodial Agreement

On March 21, 2002, CTC and KAPC, its successors and assigns, entered into a Custodial Agreement pursuant to which KAPC agreed to act as custodian of all insurance policies owned by the Trustee during the term of the Agreement (the "Custodial Agreement"). (Peterson Affidavit, ¶ 6). Pursuant to the Custodial

759980.2

Agreement, KAPC currently has physical possession of the insurance policies, and is required to maintain appropriate records of all insurance policies and all transactions. (*Id.*, ¶ 7). KAPC also agreed under the Custodial Agreement to provide the Trustee, upon request, with a periodic statement of all insurance policies held in custody by KAPC, that the Trustee in its sole discretion can withdraw the insurance policies from KAPC's possession and that the Trustee can terminate the Custodial Agreement at any time. (*Id.*, ¶ 8).

### *F&M Trust's Request For Information*

In May of 2009, F&M Trust received certain disbursement requests from PennMont which appeared to F&M Trust to be payments for attorney's fees, including, on at least one occasion, attorney's fees charged by John Koresko's law firm, KLF. Thereafter, F&M Trust requested the Koresko Defendants to provide detailed information regarding the legal services before any payments were made. (*Id.*, ¶ 9).

The Koresko Defendants provided limited information to F&M Trust demonstrating that the legal services were provided to employers in tax litigation, which was not an appropriate expense of the Trust and/or Plans. (*Id.*, ¶ 10). F&M Trust refused to pay the disbursement requests for attorney's fees based on its interpretation that the legal services were not performed directly for the intended participant beneficiaries under the Trust. (*Id.*, ¶ 11).

4

On June 2, 2009, F&M Trust requested the Koresko Defendants to provide copies of all plan documents, an updated list of all insurance policies in effect, together with the identity of the insured and the associated employer, current cash surrender value, and policy face value. (*Id.*, ¶ 12). The Koresko Defendants refused and continue to refuse to provide the requested information. (*Id.*, ¶ 13).

On July 6, 2009, F&M Trust again requested the Koresko Defendants to provide copies of the plan documents and insurance policy information. (*Id.*, ¶ 14). The Koresko Defendants refused and continue to refuse to provide the requested information. (*Id.*).

### *Koresko Defendants' Attempted Removal of F&M Trust*

In response to F&M Trust's requests for information, on July 6, 2009, the Koresko Defendants took action to remove F&M Trust as Trustee to the REAL VEBA and SEWBPT. (*Id.*, ¶ 15). On July 14, 2009, the United States Department of Labor filed an Application for Temporary Restraining Order and Preliminary Injunction against the Koresko Defendants in this Court at Docket No. 2:09-cv-00988 seeking to enjoin the discharge of F&M Trust as Trustee, *inter alia*. (*Id.*, ¶ 16). After hearing, the Honorable C. Darnell Jones, II issued an Order denying DOL's Application for a Temporary Restraining Order, but scheduled hearings on the request for a Preliminary Injunction. Among the reasons provided by Judge Jones for denying the TRO was his belief that the parties would maintain the status

759980.2

quo pending a full hearing on the Application for Preliminary Injunction.  (2:09-cv-00988 July 17, 2009 Tr., pp. 113 – 14).  After several days of hearings, Judge Jones issued an Order dated September 30, 2009 staying the removal of F&M Trust until such time as the Court issues its ruling on DOL's request for a Preliminary Injunction.  (Docket 2:09-cv-00988 Entry 133).

By letter dated July 30, 2009, Mr. Koresko advised F&M Trust that he was amending the REAL VEBA and SEWBPT instruments, and provided F&M Trust with a copy of the Amendment (the "July 29, 2009 Amendment").  (Peterson Affidavit, ¶ 17).  The July 29, 2009 Amendment generally purports to eliminate all rights, authority, duties, responsibilities, and immunities of F&M Trust as trustee under the Trusts.  For example:

a.   The July 29, 2009 Amendment purports to eliminate the ninety-day notice period for removal of the trustee under section 9.1 of the SEWBPT Trust and 8.1 of the REAL VEBA Trust.

b.   The July 29, 2009 Amendment purports to amend the Trust Agreements to include a confession of judgment clause against F&M Trust, a $250,000 per occurrence liquidated damages provision, and an attorney's fees commission of "no less than $20,000".

c.   The July 29, 2009 Amendment also purports to eliminate F&M Trust's "power to act, to be compensated, to possess or control assets, to be indemnified, to seek judicial review, or to exercise any responsibility whatsoever."

(*Id.*, ¶ 18).

Section 10.1(c) of the SEWBPT Trust Agreement and Section 9.1(c) of the

REAL VEBA Trust Agreement provide:

> (c) No amendment (including, for the purpose of this Section 9.1 [10.1], any provision of the Plan, incorporated by reference in this Trust Agreement) which affects the rights, duties or responsibilities of the Trustee may be made without its prior written consent.

(*Id.*, ¶ 19).

F&M Trust did not provide its prior written consent to the July 29, 2009

Amendment and does not consent to the July 29, 2009 Amendment insofar as it

affects the rights, duties or responsibilities of F&M Trust as Trustee. (*Id.*, ¶ 20).

### *Koresko Defendants' Failure to Deposit Contributions In Trust*

Prior to June 2009, in accordance with the Trust Agreements and Plan

Document, F&M Trust maintained a deposit account at TD Bank into which funds

were deposited by PennMont and, from which, on a daily basis, swept to an

account maintained by F&M Trust in its capacity of Trustee with Federated

Investors. F&M Trust believes that the deposits generally consisted of plan

contributions made by participating employers. (*Id.*, ¶ 21).

F&M Trust paid insurance premiums and other benefit payments as directed

by PennMont on a weekly basis from the Trust account prior to June 2009. (*Id.*,

¶ 22). Upon information and belief, in or around June 2009, the Koresko

Defendants informed participants and others that they had terminated F&M Trust

as Trustee of the REAL VEBA and SEWBPT.

Since June 2009, F&M Trust has not received any further deposits to the Trusts. (*Id.*, ¶ 23). F&M Trust believes that the Koresko Defendants have received employer-participant contributions since June 2009 in an unknown amount, but have failed to transfer the same to F&M Trust, as Trustee.

PennMont, since June 2009, has continued to make weekly disbursement requests of F&M Trust, requesting that remaining Trust assets be used to pay for insurance premiums and other benefits without making any further deposits to the Trust and without verifying employer contributions. As of result of the Koresko Defendants' actions or omissions, the Trust assets in F&M Trust's actual possession have been substantially depleted, and are in jeopardy of being totally exhausted if Defendants' course of conduct is permitted to continue. (*Id.*, ¶ 24).

### *Koresko Defendants Take Out Millions In Loans On Insurance Policies*

In or about late July 2009 and without the knowledge or consent of F&M Trust or the insureds, the Koresko Defendants requested Penn Mutual Life Insurance Company ("Penn Mutual") to make them loans on twelve insurance policies owned by the Trustee in the aggregate amount of $4,732,912.50 and to pay the proceeds to the Koresko Defendants. (Docket 2:09-cv-00988 Entry 144). The Koresko Defendants were successful in obtaining loan proceeds from Penn Mutual in the amount of $609,605.90. (*Id.*). The Koresko Defendants have retained authority or control over the $609,605.90, and it is unclear whether they have spent

8

the $609,605.90. To date, the Koresko Defendants have not accounted for these sums, nor have they notified F&M Trust of the fact that they requested the loans.

F&M Trust has also recently learned that the Koresko Defendants have sought and obtained the proceeds of additional unauthorized loans in the millions of dollars on insurance policies owned by the Trustee, on behalf of the Trust. In August and September 2009, the Koresko Defendants caused to be deposited in an account at TD Bank entitled "John Koresko, Esquire" 73 checks drawn on insurance companies totaling $34,064,648.84 (the "Checks"). The Single Employer Trust was the payee on 52 of the Checks. Of those 52 checks, 22 listed Community Trust Company as Trustee, 13 listed only Single Employer Trust, and 17 listed Penn Public Trust as Trustee. (Docket 2:09-cv-00988 Entry 146).

On September 24 and 29, 2009, the Koresko Defendants caused the following Automatic Clearing House ("ACH") transfers (the "Transfers") to be made from the Esquire Account to ING Direct accounts in the name of "John J. Koresko": (a) one (1) ACH transfer in the amount of $500.00 on September 24, 2009; (b) on September 29, 2009, twenty-four (24) ACH transfers in the amount of $1,000,000 each, and (c) one (1) further ACH transfer on September 29, 2009, in the amount of $999,500 (the "Total Sum Transferred"). The Total Sum Transferred was returned to TD Bank and, together with the balance in the account of $8,987,407.10, has been "frozen" by TD Bank pending adjudication by this

9

Court of its Motion for Leave to Intervene for purposes of interpleading all such sums into Court. (*Id.*).

By letter dated October 23, 2009, F&M Trust demanded that the Koresko Defendants provide further information relative to the policy loans taken by the Koresko Defendants, and requested the information by October 28, 2009. (Peterson Affidavit, ¶ 25). F&M Trust, as owner of the policies on behalf of the Trust, has also informed the Koresko Defendants that they are not authorized to take any additional loans on the policies without F&M Trust's prior written consent. (*Id.*).

To date, the Koresko Defendants have not provided F&M Trust with any of the information requested on the policy loans. To date, the Koresko Defendants have not provided F&M Trust with any explanation, much less any legitimate explanation, for borrowing millions of dollars on insurance policies. (*Id.*, ¶ 26).

F&M Trust believes that it has been provided with no legitimate explanation for why such large sums have been borrowed on the policies held by the Trust and, in as much as F&M Trust has not received deposits of employer contributions since June 2009, and the Koresko Defendants have refused to provide F&M Trust with basic plan information so that it can properly perform its duties and responsibilities, F&M Trust, in its capacity as Trustee, has reason to be concerned

759980.2

about the possible misapplication of such loan proceeds by the Koresko Defendants.

By letter dated October 30, 2009, F&M Trust informed the Koresko Defendants that F&M Trust had terminated the Custodial Agreement, and requested that all insurance policies and related information be immediately transferred to F&M Trust. (*Id.*, ¶ 27). F&M Trust also made further demand on the Koresko Defendants to return to F&M Trust all other Trust assets in their possession, custody or control. (*Id.*). To date, the Koresko Defendants have refused to transfer the insurance policies to F&M Trust or transfer the Trust assets in their possession, custody or control. The Koresko Defendants have also indicated that they do not acknowledge the termination of the Custodial Agreement. (*Id.*, ¶ 28).

By their actions or inactions, the Koresko Defendants have placed the Trust into serious financial jeopardy, made it impossible for F&M Trust to perform its duties as Trustee on an informed basis and as a direct result thereof, F&M Trust seeks immediate Court intervention.

## II.    LEGAL ARGUMENT

### A.    Standard for TRO and Preliminary Injunction

A court "should consider four factors in evaluating a party's motion for preliminary injunction:

759980.2

> (1) whether the movant has shown a reasonable
> probability of success on the merits; (2) whether the
> movant will be irreparably injured by denial of the relief;
> (3) whether granting preliminary relief will result in even
> greater harm to the nonmoving party; and (4) whether
> granting the preliminary relief will be in the public
> interest."

*Byrne v. Calastro*, 205 Fed. Appx. 10, 15 (3d Cir. 2006)(quoting *Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 158 (3d Cir. 1999)). The standard for granting a temporary restraining order is the same as the standard for granting a preliminary injunction. *Bieros v. Nicola*, 857 F. Supp. 445, 446 (E.D.Pa. 1994).

## B.    Reasonable Probability of Success on the Merits

### 1.    Breach of Contract

It is clear that F&M Trust has a reasonable probability of success on the merits of its claim for breach of contract. F&M Trust is the owner of the insurance policies at issue. Pursuant to the terms of the Custodial Agreement, F&M Trust is entitled to receive a statement of all activities concerning the insurance policies (¶ 4(c)), take physical custody of the insurance policies (¶ 5) and to terminate the Custodial Agreement (¶ 6). Despite repeated requests, the Koresko Defendants have refused to provide F&M Trust with any information concerning the insurance policies, transfer possession of the insurance policies to F&M Trust or acknowledge F&M Trust's termination of the Custodial Agreement.

12

759980.2

Additionally, the Trust Agreements are clear that no amendment "which affects the rights, duties or responsibilities of the Trustee may be made without its prior written consent." The Koresko Defendants breached that contractual provision when they adopted the July 29, 2009 Amendment without the prior written consent of F&M Trust. As such, the July 29, 2009 Amendment is null and void and without effect as it relates to the rights, duties or responsibilities of F&M Trust.

### 2.  Conversion

Conversion is the "deprivation of another's right of property, or use or possession of a chattel, or other interference therewith, without the owner's consent and without legal justification." *Universal Premium Acceptance Corp. v. The York Bank & Trust Co.*, 69 F.3d 695, 704 (3d Cir. 1995).

The Koresko Defendants, despite demand and without the consent of F&M Trust and without legal justification, have refused to surrender the insurance policies to the lawful owner of the insurance policies, F&M Trust. Likewise, the Koresko Defendants, without the consent of F&M Trust and without legal justification, have deposited Trust assets, particularly proceeds of loans taken against the Trust owned insurance policies, into non-Trust accounts and have refused to transfer or otherwise release those assets to the Trustee, F&M Trust.

759980.2

### 3.   Breach of Fiduciary Duty

Whether under ERISA or the common law, a fiduciary must discharge its duties solely in the interest of participants and beneficiaries and act with the care, skill, prudence and diligence under the circumstances that a prudent man would use in a similar situation. *See* 29 U.S.C. § 1104; *Dardovitch v. Haltzman*, 190 F.3d 125, 150 (3d Cir. 1999). The Koresko Defendants have acted in their own self-interest, and not solely in the interests of participants and beneficiaries by, *inter alia*, obtaining and retaining millions of dollars in Trust assets, refusing to transfer all Trust assets to the Trustee as lawful owner, and requesting and obtaining millions of dollars in policy loans and then attempting to transfer approximately $25 million in policy loan proceeds to an account controlled by John Koresko. Further, the Koresko Defendants have failed to act in accordance with the documents governing the Plans, including the Custodial Agreement and Trust Agreement.

The Third Circuit has upheld the grant of a preliminary injunction in a case similar to the instant action. In *Byrne*, the Court upheld the removal of plan fiduciaries because there was evidence that they were misappropriating plan assets. 205 Fed. Appx. at 15. In reaching this decision, the Third Circuit recognized that an "ERISA fiduciary who breaches any of his responsibilities, obligations or duties is subject to equitable or remedial relief, including removal, . . ." *Id.* Pennsylvania

14

law contemplates a similar result. *See, e.g.,* 20 Pa.C.S.A. §§ 7121 and 3182 (fiduciary can be removed if it is wasting or mismanaging the estate, failed to perform any duty imposed by law or the interest of the estate is likely to be jeopardized by the fiduciary's continuance in office.). Here, because the Koresko Defendants have breached their duties as outlined above, removal is appropriate.

### 4.    Accounting

"In an accounting claim, a plaintiff seeks to compel a defendant to account for and pay over money owed to the plaintiff but held by the defendant." *Alpart v. General Land Partners, Inc.*, 574 F. Supp. 2d 491, 508 (E.D. Pa. 2008). "There is no more fundamental duty imposed on those who hold property for others than that of rendering an account of its management." *In re Pittsburgh Rys Co.*, 117 F.2d 1007, 1008 (3d Cir. 1941). Pennsylvania Courts have ordered accountings in the context of preliminary injunction proceedings where the accounts at issue are mutual or complicated and the moving party does not have an adequate remedy at law. *See A.M. Skier Agency, Inc. v. Gold*, 747 A.2d 936, 941 – 42 (Pa. Super. 2000).

The Koresko Defendants are in possession of Trust assets in the form of insurance policies, the proceeds of loans taken against insurance policies and perhaps other Trust assets such as employer contributions. Despite repeated requests, the Koresko Defendants have refused to transfer these assets to the

15

759980.2

Trustee and have refused to provide the Trustee with any information concerning these Trust assets. Further, the Koresko Defendants have obtained loans against insurance policies behind the back of the Trustee. In this case the accounts are complicated and there is no other method for F&M Trust to obtain the information that it needs to perform its duties as Trustee. F&M Trust has no adequate remedy at law to obtain this information and ordering an accounting is appropriate.

## C.    Irreparable Harm

The Trusts and its intended beneficiaries and F&M Trust and potentially Plan sponsors and their plan participants will be irreparably injured if the request for TRO and preliminary injunction is denied. Courts have found irreparable injury where the confidence of plan participants in the plan fiduciaries has been eroded because "serious questions about possible financial misconduct go unanswered." *Id.* at 16. Irreparable harm has also been found when a party failed to make contributions to a pension fund, thus raising the specter that the Fund would not be able to pay benefits:

> The continued integrity of these Funds is of vital
> importance to all union mine workers. Therefore, when
> an employer fails to make royalty payments, as required
> by contract, the interest of both the Trustees and the mine
> workers are imperiled.
>
> *        *        *
>
> Since the defendant is already obligated to make these
> payments, we see no prejudice resulting from the
> issuance of a preliminary injunction.

16

*Combs v. Hawk Contracting, Inc.*, 543 F. Supp. 825, 829 – 30 (W.D. Pa. 1982). The Koresko Defendants, through their actions and inactions – particularly their refusal to provide information necessary for the Trustee to discharge its duties – create serious questions about financial misconduct and imperils the viability of the Trust.

Further, the actions of the Koresko Defendants, particularly the clandestine loans against the insurance policies, raises significant questions as to the long term viability of the Plans.  In such cases, failure to freeze and protect assets constitutes irreparable harm. *See Chicago Title Ins. Co. v. Lexington & Concord Search and Abstract, LLC*, 513 F. Supp. 2d 304, 319 (E.D. Pa. 2007)(irreparable harm present if plaintiff can show that it is entitled to encumbered funds upon final judgment and that without preliminary injunction the plaintiff will probably be unable to recover those funds.).

Finally, in light of the loans that the Koresko Defendants have been taking against the insurance policies and their failure to provide information that F&M Trust is entitled to under the applicable documents and in order for F&M Trust to discharge its duties as Trustee, the Plan Participants will be irreparably harmed if protections are not in place to determine the status of and preserve Trust assets.

759980.2

### D. Granting the TRO and Preliminary Injunction Will Not Result in Greater Harm to the Koresko Defendants and Will Protect the Public Interest

In *Byrne*, the Third Cicuit agreed with the lower court's finding that "ERISA evinced a congressional determination that employee benefit plans are in the national public interest and that there is a public interest in ensuring honest management of the Funds." 205 Fed. Appx. at 16. On this basis, the Court found that the equities weighed in favor of granting the injunction. The same holds true here. F&M Trust is asking this Court to protect the interests of the Trust, their intended beneficiaries and Plan participants and sponsors by requiring the Koresko Defendants to comply with their contractual and legal duties. Because of the Koresko Defendants' refusal to acknowledge and abide by the these duties, their removal is appropriate. *Id.* The greater harm will result if the status quo is maintained.

## III. CONCLUSION

F&M Trust requests that this Court enter a TRO and, after a hearing, a preliminary injunction:

(1)     requiring the Koresko Defendants, and anyone acting in concert with them or pursuant to their instruction or authority, to immediately transfer any and all assets owned by or on behalf of the Trust to the Trustee, F&M Trust, or its successor, including, but not limited to all insurance policies, cash, proceeds of

18

loans on insurance policies, employer and/or participant contributions and any other assets of the Trust not currently held in or for the Trust's account by F&M Trust;

    (2)    prohibiting the Koresko Defendants from borrowing any monies from any insurance policy owned by or on behalf of the Trust by F&M Trust without F&M Trust's, or its successor's, prior written approval thereof;

    (3)    restoring all assets to the Trust, including any losses caused by the Koresko Defendants;

    (4)    requiring the Koresko Defendants to provide F&M Trust, or its successor, with full and complete information concerning each and every adopting employer currently or previously participating in REAL VEBA and SEWBPT, including contact information for each employer, historical contributions made by each current or former adopting employer and names and employment relationship of each participant under each adopting employer plan;

    (5)    requiring the Koresko Defendants to provide a full accounting of all transactions involving (i) all insurance policies owned by the Trustee on behalf of the Trust since March 2002 including, specifically, any policy loans; (ii) all contributions by employer-participants, and deposits to the Trust account with respect thereto, since June 2009; and (iii) all Trust assets in the possession, custody or control of the Koresko Defendants.

759980.2

(6)    requiring the Plan Administrator, or its successor, to notify participating employers that all employer and/or participant contributions should be made directly to F&M Trust, or its successor, for deposit to the Trust's account;

(7)    requiring the Plan Administrator, or its successor, to notify all participating employers that disbursements on behalf of any particular participating employer or the beneficiaries of its respective Plan from the Trust will only be made provided a participating employer or participant makes a corresponding contribution to the Trust in advance of such disbursement;

(8)    confirming the Koresko Defendants' obligation to provide F&M Trust with information concerning the insurance policies, to turnover possession of the insurance policies and to find that the Custodial Agreement has been terminated;

(9)    requiring the Koresko Defendants to indemnify F&M Trust;

(10)    declaring that the July 29, 2009 Amendment as it affects the rights, duties or responsibilities of F&M Trust is null and void and without effect, including, but not limited to Article XIII(a)-(j) of the July 29, 2009 Amendment, which is null and void in its entirety; and

(11)    removing PennMont Benefit Services, Inc. and appointing a qualified independent administrator as Plan Administrator or, alternatively, an Order permitting F&M Trust to immediately resign as Trustee.

759980.2

Respectfully submitted,

RHOADS & SINON LLP

Date:  November 9, 2009

By:   /s/ Timothy J. Nieman
Timothy J. Nieman
Attorney I.D. No. 66024
Stephen Moniak
Attorney I.D. No. 80035
One South Market Square
P.O. Box 1146
Harrisburg, PA 17108-1146
(717) 233-5731
tnieman@rhoads-sinon.com
smoniak@rhoads-sinon.com

Attorneys for Plaintiff Farmers and
Merchants Trust Company of
Chambersburg

759980.2